IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RONNY GARCIA,

       Plaintiff,

v.                                     CIV 07-0631 WJ/KBM

CAPTAIN TONY SANDERS,
LIEUTENANT DANIEL BLANCO,
CORRECTIONAL OFFICER MICHAEL K. WEISTER,
SERGEANT WILLIAM D. EDGMAN,
LIEUTENANT JONATHEN SAVAGE, and
DISCIPLINARY OFFICER JAMES LUJAN,

       Defendants.

# <u>PROPOSED FINDINGS<br>AND<br>RECOMMENDED DISPOSITION</u>

Plaintiff Ronny Garcia filed this *pro se* prisoner civil rights case and raises

claims under 42 U.S.C. § 1983 for events that occurred when he was housed at the

Southern New Mexico Correctional Facility ("SNMCF").  *See Doc. 1.*  Presiding

Judge William Johnson dismissed Plaintiff's "good time credit" claim and Deputy

Warden Steve Nance at the outset.  *See Doc. 7.*  After the remaining Defendants

answered, I asked them to file a *Martinez* Report.  *See Docs. 8-13.*  I have also

construed Plaintiff's pleadings liberally thereby allowing two amendments to the

verified Complaint.  *See Docs. 1, 14-17.*  In addition to Plaintiff's initial pleadings, this matter is before the Court on Defendants' *Martinez* Report[1] and supplemental affidavit thereto, Plaintiff's response, and Defendants' reply.  *See Docs. 19* (hereinafter "*Martinez Report*")*, 24-26.*  Briefing is complete[2] and having carefully considered the entire record, for the reasons below, I recommend that this matter be dismissed.

## I.  Factual Background

Defendants note that Plaintiff's allegations can be difficult to decipher and, thus, in some parts of the *Martinez* Report, take the position that they are unable to provide the Court with information and/or prison records regarding the allegation.[3]

---

[1]  The exhibits to the *Martinez* Report are bates-stamped, which is much appreciated by the Court.  For ease of reference I will cite those page numbers instead of the exhibit letter.

[2]  The *Martinez* Report does not provide the Court with some of the relevant information and the Court has had to supplement the *Martinez* Report with certain public records to provide a more complete overview of the background.  Nevertheless, I do not find that the deficiencies in the *Martinez* Report, *see infra* note 3, require additional briefing before resolving the matter.

[3]  *See, e.g., Martinez* Report at 2-3, 12, 53-54, 259; *Doc. 26* at 5-7.  For example, Defendant Tony Sanders, now Unit Manager at SNMCF, avers that he "had to reconstruct . . . from memory" things such as when Plaintiff was moved to disciplinary segregation, assigned to work details, medical complaints and treatment.  *Martinez Report* at 54.  It has been this Court's experience that the whereabouts of prisoners are carefully monitored and documented, as are medical requests, medical treatment, inmate discipline, and work details.  It therefore seems that even though Plaintiff was not precise in providing dates, Defendants could have ascertained what he meant by consulting their own records.  Moreover, in places, the tone of Defendants' reply is inappropriate and counsel for Defendants is advised to desist from such unprofessional behavior in the future.  *E.g., Doc. 26* at 3-4 (to Plaintiff's assertion that he was called a "Bitch, Bastard,

It is true that this Court has had similar difficulty in deciphering Plaintiff's

allegations based simply on his pleadings.  *See Doc. 15.*  In light of the records that

were transmitted, however, Plaintiff's allegations are fairly simple to comprehend,

as are the applicable constitutional provisions.

### A.  *Transfer Moots Injunctive & Declaratory Relief*

Plaintiff and his family live in the Northern part of the state – near

Farmington, New Mexico.  He has been incarcerated several times in the past

decade or so, but for the purposes of this matter, it appears that since at least mid-

2006, he was incarcerated either in SNMCF or in some other facility farther south

from Farmington than he desired.[4]

———————————————

Know it all, and Punk," Defendants respond that they "must deplore profanity but admit that, on
occasion, employees of this Department do resort to such violent language.  As the term 'bastard'
was until recently a cognizable legal term of art, the Defendant has no knowledge of Plaintiff's
parentage and thus this allegation . . . is denied.  Putting aside the pejorative connotation of
'bastard,' if it is proved that the Plaintiff is indeed a bastard, then the Defendant does admit it.
Defendant . . . has no knowledge that, within the context of prison slang, Plaintiff is or is not in
fact a 'bitch' or a 'punk'"); *id.* at 7 ("Plaintiff appears to confine his baseless vitriol"); *id.* at 10
("This (thankfully) final allegation").

[4]  A map of the adult prison facilities in New Mexico is available online at:
http://corrections.state.nm.us/prisons/locationmap.html.  The combination of the "offender
disciplinary history" and "review decision details" sheets submitted with the *Martinez* Report
suggests that:  in 1997, Plaintiff was housed in "Southern Main," which I presume is SNMCF in
Las Cruces; in 2000 and as of November 2001, he was housed in "Western Min," presumably
Western New Mexico Correctional Facility ("WNMCF") in Grants; as of June 2005 and July
2006, he was housed in "Guadalupe CO," presumably Guadalupe County Correctional Facility
("GCCF") in Santa Rosa; and sometime after July 2006, he was transferred back to SNMCF.  *See
Martinez Report* at 17 (offender discipline history sheet showing discipline hearing at "Southern
Main" in 1997, at "Western Min" in 2000 and 2001, and "Guadalupe Co." in 2005); *id.* at 244

Because of his mother's illness and inability to travel to visit, starting in August 2001 he has requested a "hardship transfer" on eight occasions. Six times his request was approved – the first in October 2001 and the four most recent in July 2006, January 2007, October 2007, and May 2008. The approvals, however, were subject to space availability, and it was not until June 2008 that Plaintiff was transferred out of SNMCF to the Torrance County Detention Facility.[5] The Torrance facility is located in Estancia, New Mexico – Estancia is southeast of Albuquerque and lies approximately in the middle of the State.[6] Thus, Plaintiff is now closer to home and, by transferring him after he initiated suit, Defendants

---

(as of 7/26/06, when evidently housed at GCCF, Plaintiff approved for Level I placement anywhere except for "RCC," presumably Roswell Correctional Center).

[5] New Mexico Corrections Department classification bureau administrator Colleen McCarney's affidavit describes what she discovered in the database records and attaches "screen shots" of the same. She interprets the records as Plaintiff requesting transfer "to be closer to his ailing mother," and notes that six of eight approvals had been had been granted, but that a transfer is "subject to availability." *Id.* at 238; *see also id.* at 237-49. If I understand these documents correctly, after the date when I believe he was transferred to SNMCF, Plaintiff was approved for a transfer three times. *See id.* at 245 (as of 1/11/07 approved for transfer to WNMCF or to "Los Lunas," presumably Central New Mexico Correctional Facility or "CNMCF"); *id.* at 246 (as of 10/26/07 approved for transfer to CNMCF or "PNM II"); *id.* at 247 (5/23/08 approved to transfer to any Level III facility except "SFCADF," presumably Santa Fe County Adult Detention Facility). In April 2007, a letter from SNMCF Warden Mike Heredia to Plaintiff included the assurance that he would be "transferred as soon as a space becomes available at the receiving facility." *See id.* at 223 (4/9/07). Plaintiff filed suit in July 2007, and advised the Court of a change of address in June 2008. *See Docs. 1, 18.*

[6] *See* http://corrections.state.nm.us/prisons/locationmap.html. According to Google Maps, the drive from Farmington to Estancia is approximately 235 miles and a four-hour drive. *See* http://maps.google.com.

have mooted his demands for declaratory and injunctive relief.[7]

While awaiting transfer, however, Plaintiff filed several grievances with the New Mexico Department of Corrections, complaining about subjects ranging from good time credit to toilet facilities, disciplinary proceedings, and retaliation.  *See Martinez Report* at 220-236.  In February and June of 2007, he was disciplined twice.  It is these two disciplinary proceedings, and the consequences thereof, that sparked this lawsuit.[8]

## A.  The Marijuana Charge

On February 9, 2007, Defendant Lieutenant Jonathen Savage was observing Plaintiff and another inmate named "Nieto."  Lt. Savage was not in the cell block.  Rather, he was located in some sort of observation area.  Either what he saw, or a

---

[7]   *See Doc. 1* at 5 (demanding "a transfer . . . prison to be monitored by federal agents, all allegations concerning report to be honored . . . and for officers to be sanctioned"); *Mitchell v. Estrada,* 225 Fed. Appx. 737, 741 (10th Cir. 2007) ("We note that Mr. Mitchell is no longer an inmate at USP-Florence . . . transfer from a prison facility generally moots claims for declaratory and injunctive relief related to conditions of confinement.  *See Green v. Branson,* 108 F.3d 1296, 1299-1300 (10th Cir. 1997) . . . ; *Love v. Summit County,* 776 F.2d 908, 910 n. 4, 912 (10th Cir. 1985) . . .   Because Mr. Mitchell has been transferred to another facility, his claims for declaratory and injunctive relief are moot.  Thus, this court lacks jurisdiction to consider the district court's ruling on Mr. Mitchell's declaratory judgment and injunction claims.  *See Green,* 108 F.3d at 1299.").

[8]   Plaintiff first filed in state court for a "writ of mandamus."  That action was dismissed because mandamus is not available where the petitioner fails to allege the nonperformance of a nondiscretionary act and where the prison disciplinary process was not yet complete.  The state court proceedings did not involve federal constitutional claims.  *See Martinez Report* at 206-19.

view from another vantage point, was also recorded on a surveillance videotape.

At this point, the tape no longer exists, though it did at the time of the disciplinary

proceeding.  New Mexico Corrections Department "practice is not to keep the

videotapes of such incidents after adjudication of the discipline." *Id.* at 2.

Lt. Savage saw Plaintiff and Nieto

> sit down by the dresses (sic)in the four man cubical of
> 413 and 414 holding a container of some type.  I then
> observed inmate Ronny Garcia . . . sit down on the side of
> inmate Nieto and get a piece of paper from the desk
> located in the four man cubical.  I then advised officer
> Juan Alvarez in the occurrences that I was observing and
> advised him to report to the area and investigate via hand
> held radio.  I then observed inmate Ronny Garcia get a
> spoon and take something out of the container that
> inmate . . . Nieto was holding and place it into the piece
> of white paper . . . .  I then observed inmate . . . Nieto
> place the container that he was holding on the floor area
> by the bunk.  Officer Alvarez and Sgt. Trujillo then
> arrived in the area, when inmate Ronny Garcia then
> stood up and began walking out of the four man cubical
> area when I observed inmate Garcia toss the white paper
> down on the floor as he was walking back to the Officers.
> Officer Alvarez then found the container . . . .   I then
> advised Sgt. Trujillo where inmate Garcia had tossed the
> white piece of paper and Sgt. Trujillo then recovered the
> white piece of paper from the floor . . . .  Sgt. Trujillo and
> Officer Alvarez then escorted both inmates to the visiting
> room . . . .  Sgt. Trujillo then handed me the container
> with a green leafy substance inside it, with also the white
> piece of paper containing a green leafy substance.  I then
> conducted a field test on both substances that were
> recovered with both substances being positive for THC . .

6

. .  All evidence was then placed into the evidence locker.

*Id.* at 4 (typographical errors corrected).[9]  Possession of marijuana is considered a

"major" violation.[10]  Though he had other "minor" violations at other prisons,

evidently this was Plaintiff's first violation at SNMCF.[11]

Defendant Correctional Officer James Lujan was the disciplinary officer at

the time of the incident, and was responsible for "investing allegations of inmate

misconduct, . . . collecting all reports and other evidence relevant to the charges,

conducting or aiding in the conduct of disciplinary hearings, and forwarding a

disciplinary recommendation to the Deputy Warden."  *Id.* at 1.   He investigated

---

[9]  Officer Trujillo's and Officer Alvarez' statements recount the same, and specify that the "container" they found was a soap dish.  *Id.* at 5-6.  The "substance test record/chain of custody" report, also dated 2/9/07, contains pictures of the soap dish and the white piece of paper.  *Id.* at 7-10.

[10]  New Mexico Corrections Department policy, both at the time of the offense and now, define "dangerous drugs" as any "intoxicant, including alcohol, inhalant, and any substance listed as a controlled substance in New Mexico State Statutes [as well as] ingredients or substances combined for the purpose of producing an intoxicant and any other counterfeit controlled substance."  *Id.* at 61.  New Mexico's criminal statutes define marijuana as a Schedule I drug.  *See* N.M. STAT. ANN. § 30-31-2(E) ("'controlled substance' means a drug or substance listed in Schedules I through V of the Controlled Substances Act or rules adopted thereto"); *id.,* § 30-31-6(C)(10) (Schedule I items include marijuana:  "any material, compound, mixture or preparation that contains any quantity of the following . . . marijuana").   "Possessing, using or having under control or in custody any item defined as dangerous drugs" is classified as a "Category A" offense for prison disciplinary purposes.  *Martinez Report* at 87.  The current polices for inmate discipline are available electronically through the New Mexico Corrections Department website - http://corrections.state.nm.us/policies/policyid.html.

[11]  The "offender discipline history" report run as of February 2007 showed six prior minor offenses from 1997-2005.  *See Martinez Report* at 17.

the charge against Plaintiff from February 12, 2007 to February 21, 2007.  *See id.* at

13, 15.  His report states that he met with Plaintiff, and advised him of his right to

remain silent.  Plaintiff waived that right and denied the charges, saying

> [I] met with Inmate Garcia to conduct an investigation
> regarding the report and charge(s) against him.  Prior to
> the interview, Inmate Garcia was advised of his right to
> remain silent.  Inmate Garcia waived this right and made
> the following statement:  "He's full of shit.  I grabbed a
> white spoon out of my locker for ice ream which I was
> eating at the time they came and Sgt. Trujillo said they
> saw me toss something.  I didn't toss nothing in nobody's
> room.  I can't toss a paper 2 times.  All I was saying was
> good bye because we knew we were going to the hole."

*Id.* at 13.  Plaintiff further advised Officer Lujan that stated he wanted to appear at

the hearing, but did not want someone else to represent him there.  He gave

Officer Lujan the names of three inmates he wanted to call as witnesses.  When

Officer Lujan interviewed those witnesses, Plaintiff's co-defendant denied any

wrongdoing and the other two declined to make a statement.[12]

When he interviewed the correctional officers who discovered the

---

[12]  *Id.* at 13-14 ("When asked if [Plaintiff] wanted to appear or waive his hearing, he stated:  "appear."  When asked if he wanted another inmate or staff member to represent him he stated: "No." [I] interviewed inmate . . . Nieto . . . as he was called as a witness [and he] stated: "we came out of the chow hall at the same time the movie was started.  Ronny didn't have nothing."  [I] interviewed inmate . . . Lucero . . . as he was called as a witness by inmate Ronny Garcia.  Inmate Lucero did not wish to make a statement.  [I] interviewed inmate . . . Sedillo . . . as he was called as a witness by inmate Ronny Garcia.  Inmate Sedillo did not wish to make a statement.").

contraband, they had nothing more to add to their written statements.  *Id.* at 14.

With regard to what Lt. Savage saw, Officer Lujan

> *reviewed the surveillance video recording* to this
> incident.  [My] review and that of Lt. Jonathen Savage
> are consistent with each other only that [I] did observe
> inmate Ronny Garcia take the piece of white paper out of
> his mouth and toss it where it was then recovered by Sgt.
> Joseph Trujillo. [I] never observed inmate Ronnie Garcia
> with ice cream or eating ice cream and the container that
> I viewed on the recording is consistent with the [soap]
> container that was recovered by Officer Juan Alvarez and
> later turn[ed] into the evidence locker.  During the time
> inmate Ronny Garcia was observed using a spoon to take
> the unknown substance out of the container that inmate
> . . . Nieto was holding, an unknown inmate was seen
> keeping a lookout.

*Id.* at 14 (certain punctuation also supplied).

The originally-scheduled hearing was set for Friday, February 23, 2007, but

had to be cancelled because Hearing Officer Ricardo Salayandia became ill.  The

matter was continued to the following Monday, February 26, 2007.  *See id.* at 12,

15, 21.  Among other things,[13] Plaintiff requested to see the video surveillance tape,

but was denied because "the area where the surveillance is located is a restricted

area" where inmates are not allowed  and because the substance of the video "was

---

[13]  Plaintiff was advised of his rights and did not request any witnesses.  *See id.* at 15, 19-
21.  He also advised the tribunal that it had been using the wrong inmate number for him
throughout the proceedings.  That was deemed a clerical error and corrected.  *Id.* at 21.

transcribed on both the misconduct report and on the investigation." *Id.* at 21; *see also id.* at 18 (Plaintiff's defense was "'listen to the tape'"). Plaintiff further accused a "Lt." (presumably Defendant Savage) of "retaliation," specifically asserting that this officer told Plaintiff that if Plaintiff "would tell him where he got the stuff from, he would not write him up." *Id.* at 21. The assertion was rejected as "hearsay, as there was no proof presented at the hearing." *Id.* The same day of the hearing, Plaintiff wrote a letter to Secretary of Corrections Joe Williams making various complaints including retaliation, grievances were not being heard at SNMCF, and that he still had not been transferred closer to his mother. He asked for an "informal complaint form for I can file one against this place." *Id.* at 226.

On March 12, 2007, Hearing Officer Salayandia entered his recommended finding. He recommended finding Plaintiff guilty of possessing drugs and tampering with evidence. He further recommended as a sentence, that Plaintiff be placed in disciplinary segregation for a total of 60 days, lose his visitation privileges for 60 days, and forfeit 180 days of good time credit. Someone highlighted the recommended sentence. *Id.* at 22.

Two days later, on March 14, 2007, the "D.W." approved the recommended decision and sentence without comment. I assume this was Deputy Warden Steven Nance. *See id.* at 22-25. Plaintiff received a copy of the decision the same

10

day.  *See id.* at 22.  On an appeal form also signed the same day, Plaintiff

complained that "a report cannot be given out of arbitrary or retaliatory, which is

proven by report given" and that he was entitled to view the surveillance tape

because it could have been removed and "shown in any authorized area."  *Id.* at 30.

On an obviously later, but undated document, Plaintiff claims that he "directly

handed [his appeal form] to James Lujan on March 14, 2007."  *Id.* at 29.  Officer

Lujan's signature on Plaintiff's appeal, however, states that he "received and

logged" the appeal on March 27, 2007, and sent the documents along for the

Warden's review on the next day.  *Id.* at 30.[14]

Meanwhile, on March 23, 2007, Secretary William's office had asked

SNMCF Warden Heredia to respond to Plaintiff's February 27th letter.  *Id.* at 225.

On April 9, 2007, he did so and gave Plaintiff ten grievance from to file complaints

of retaliation against "Level II staff to include Deputy Warden Steve Nance."  *Id.* at

223.  With regard to complaint that SNMCF "is non-compliant in following the

grievance policy," he said a "new tracking system will be implemented to assure the

timely processing of inmates grievances."  *Id.*  He assured Plaintiff that he would

---

[14]  The "disciplinary hearing officer's" name is not printed on the form.  Nevertheless, the signature appears to be Defendants Lujan's, since it is the same as his signature on his affidavits and disciplinary forms that show his printed name next to his signature.  *Compare id.* at 3, 15, 33, and 40, *with id.* at 30.

"transferred as soon as a space became available at the receiving facility." *Id.*  The next day, Warden Heredia denied Plaintiff's appeal of the disciplinary charge and sentence.  *Id.* at 27.  Plaintiff's further appeal to Secretary Williams was denied by the end of May 2007.  *Id.* at 26, 28-30.

## B.  The Tobacco Charge

The tobacco disciplinary proceedings followed on the heels of the concluded marijuana proceedings.  On June 7, 2007, correctional officer who is not a Defendant to this case

> observed Inmate Garcia sitting on his bunk (145) putting away a cigarette in his manila folder from Master Control. I was observing Inmate Garcia from a Monitor that was (had) dorm 1 on it at the time.  I then left Master Control and walked into A"side dorm 1 and advised Inmate Garcia to unlock his foot locker where I found a cigarette in a clear baggie inside a manila folder, another clear baggie with tobacco residue and a clean baggie with rolling paper and lose (sic) tobacco, inside a grey container.  Items were then placed in evidence.

*Id.* at 34 (duplicated *id.* at 43).[15]  Possession of tobacco is a minor offense.[16]

_____

[15]  Again, the officer's statement and pictures of what was seized were part of the investigation.  *See id.* at 34-36 (duplicated *id.* at 43-45).

[16]  Possession of "contraband items," that is, "anything not allowed to be received through the mail, not sold at canteen or issued by the State, out of its original condition, not permitted by the Warden *or otherwise not permitted to be retained.*"  *Id.* at 142.  The policies attached to the *Martinez* Report do not cover tobacco, but since 2002, New Mexico prisons have been smoke-free and "[i]nmates are not allowed to utilize or have in their possession any smoking

Again, Defendant Lujan was responsible for investigating the charge and he did so from June 11, 2007 through June 14, 2007.  *See, e.g., id.* at 31-32; *id.* at 38-40 (duplicated *id.* at 47-49).  During the investigation, Plaintiff exercised his right to remain silent, but did state that he wanted to appear at the hearing.[17]  At the hearing before Hearing Office Jose Armendariz, however, Plaintiff waived his right to appear and did not contest the charges.  Based on Officer Alvarez' report and the seized evidence, Officer Armendariz found Plaintiff guilty and recommended loss of visitation for 15 days.   The same day, the Deputy Warden (presumably Steve Nance), approved the recommendation and Plaintiff signed receipt of the same.  *See id.* at 40-42 (duplicated *id.* at 49-51).

Nothing in the record shows that Plaintiff appealed the tobacco disciplinary decision.  Indeed, his response makes it clear that he is not challenging the tobacco proceeding itself.  *See Doc. 25* at 3 ("The argument is not being found in possession of Tobacco on June 15, 2007 but [other matters after the hearing].").

_____

materials or tobacco products [and if] found using or possessing any such items shall be subject to disciplinary action."  *N.M. Corrections Dept. CD-160400* (effective 8/23/02) (available online at http://corrections.state.nm.us/policies/policysafety.html).

[17]  *See Martinez Report* at 39 (duplicated *id.* at 48) (report dated 6/11/07 provides that "[t]his Disciplinary Officer met with Inmate Garcia to conduct an investigation regarding the report and charge(s) against him.  Prior to the interview, Inmate Garcia was advised of his right to remain silent; Inmate Garcia exercised the right and made no statement.  When asked if he had any witnesses he stated:  "No."  When asked if he wanted to appear or waive his hearing he stated: "Appear.") (certain punctuation supplied).

# II.  Analysis

## A.  *Standard Of Review*

As mentioned in my earlier order, a *Martinez* Report can be used for summary judgment purposes.  *Doc. 13* at 3-4.  Summary judgment is proper if the record before me shows "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c).  In a summary judgment posture, the verified Complaint and the *Martinez* Report are treated as affidavits.  *Hall,* 935 F.2d at 1111 ("A *Martinez* report is treated like an affidavit . . . .  The plaintiff's complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury.").  It bears repeating that only "material" and "genuine" disputes of fact preclude summary judgment.  "[F]actual disputes about immaterial items are irrelevant [and] it is not enough that the evidence [in opposition is] 'merely colorable' or anything short of 'significantly probative.'"  *Hall,* 935 F.2d at 1111.  "[C]onclusory and self-serving affidavits are not sufficient."  *Id.*[18]

---

[18]  *See also, e.g., Faustin v. City and County of Denver, Colo.,* 423 F.3d 1192, 1198 (10th Cir. 2005) ("although there is some dispute as to the scope of Denver's policy, because we have assumed the broadest policy supportable by the record and still conclude that Faustin fails to establish that such a policy is either unconstitutionally broad or vague, this dispute [factual] becomes immaterial"); *Thomas v. Bruce,* 233 Fed. Appx. 815, 818 n.1 (10th Cir. 2007) ("even considering the excluded allegations, Mr. Thomas presented nothing relevant . . . which conflicted with the *Martinez* report."); *Fisher v. Mullin,* 213 Fed. Appx. 698, 701 (10th Cir. 2007)

## B. Disciplinary Proceedings & Related Claims

In connection with the marijuana disciplinary proceedings, Plaintiff claims that prison policy "CD 090101" was not followed and he was denied due process when he was not permitted to view the surveillance videotape. He reiterates that the tape could have been removed to a nonrestricted area to be viewed. His claims are specifically directed against Defendants Lujan and Savage and based on Plaintiff's contention that he is innocent of the charges. That is, because he is innocent, Lt. Savage "falsified a Report to deny me my liberty;" because he is innocent, Officer Lujan "violated policy" by "elevating" possession of a spoon for ice cream to a criminal charge "to deny me my liberty." *See Doc. 1* at 2, 3; *Doc. 14* at 1; *Doc. 25* at 2-3, 6-7. His response makes it clear that he is not challenging the tobacco proceeding itself. *See Doc. 25* at 3 ("The argument is not being found in possession of Tobacco on June 15, 2007 but . . .").

I do not reach the merits of these claims because two lines of cases foreclose any relief. The first line of cases is the well-established principle that relief is not available under § 1983 absent a violation of federal law. *E.g., Paul v. Davis,* 424

---

("To withstand summary judgment, Mr. Fisher was required to identify specific facts to establish his claims . . . . We recognize that a Martinez report is treated like an affidavit and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence. . . . Nevertheless, . . . conclusory allegations are insufficient to put a material fact in dispute.") (internal quotations and citations also omitted).

U.S. 693, 699-700 (1976); *Wilder v. Turner,* 490 F.3d 810 (10th Cir. 2007), *cert.*

*denied,* 128 S. Ct. 1229 (2008).  Violation of a prison policy or regulation, for

example, will not suffice.

> We read Gaines's first contention to be that the district
> court erred in dismissing his complaint because the
> defendants' violation of Kansas administrative regulations
> at his disciplinary hearings deprived him of his
> state-guaranteed due process rights.  To the extent
> Gaines seeks relief for alleged violations of state statutes
> and prison regulations, however, he has stated no
> cognizable claim under § 1983.  *See Adickes v. S.H. Kress
> & Co.,* 398 U.S. 144, 150 (1970) (emphasizing that a §
> 1983 plaintiff must prove the defendant deprived him of a
> right secured by the Constitution and laws of the United
> States); *Hill v. Ibarra,* 954 F.2d 1516, 1520 (10th Cir.
> 1992) (same).

*Gaines v. Stenseng,* 292 F.3d 1222, 1125(10th Cir. 2002).  Thus, to the extent that

Plaintiff's claim is based on a violation of prison policy, the claim must be

dismissed.[19]

---

[19]  *See also, e.g., Ross v. Romero,* 191 Fed. Appx. 682, 683-684 (10th Cir. 2006) ("As to
Ross' due process claim, the district court noted the claim was based on an assertion that policies
of the New Mexico Department of Corrections created a protected interest in the property
removed from his cell and eventually lost.  That such a right could flow from mandatory state
prison regulations was, however, directly rejected in this court's decision in *Cosco v. Uphoff,* 195
F.3d 1221, 1223-24 (10th Cir. 1999)."); *Dexter v. Ford Motor Co.,* 92 Fed. Appx. 637, 641 (10th
Cir. 2004) ("Dexter concedes that violation of an express prison policy requiring seatbelting of
inmates cannot provide the basis for establishing an Eighth Amendment violation," citing *Davis
v. Scherer,* 468 U.S. 183, 194 (1984) and *Olim v. Wakinekona,* 461 U.S. 238, 250-51 (1983)); "
*Payne v. Friel,* 2007 WL 1100420 at *2 (D. Utah 2007) ("Although prison rules may include
additional procedural guidelines for disciplinary hearings, an inmate cannot rely on those rules to
state a constitutional due process claim because 'state procedures do not define what is required

Moreover, some of the constitutional amendments Plaintiff invokes do not state a claim. For instance, he asserts that he was "punished 3 times for same offense." *Doc. 1* at 3. Nevertheless, it is "well established that prison disciplinary sanctions . . . do not implicate double jeopardy protections." *Fogle v. Pierson,* 435 F.3d 1252, 1262 (10th Cir. 2006) (internal quotations omitted) (citing *Breed v. Jones,* 421 U.S. 519, 528 (1975) and quoting *Wirsching v. Colorado,* 360 F.3d 1191, 1205 (10th Cir. 2004); *Payne, supra* note 19 (same, citing *Helvering v. Mitchell,* 303 U.S. 391, 398 (1938) and *Lucero v. Gunter,* 17 F.3d 1347, 1351 (10th Cir. 1994)). Plaintiff also invokes the Eighth Amendment, contending that his treatment associated with the disciplinary proceedings was "cruel and unusual," but "[p]rocedural improprieties in connection with his disciplinary proceeding are not sufficient to support an Eighth Amendment claim." *Walters v. Guilfoyle,* 68 Fed. Appx. 939, 940 (10th Cir. 2003) (citing *Brown v. Smith,* 828 F.2d 1493 (10th Cir. 1987)).

Plaintiff cites the First and Fourteenth Amendments as a basis for his retaliation claims with respect to the disciplinary proceedings, and cites the Sixth Amendment as the basis for his due process claim with respect to the same. The

---

under federal due process.' *Glatz v. Kort,* 807 F.2d 1514, 1517 n. 4 (10th Cir. 1986)."), *aff'd on this part and reversed on other ground,* 266 Fed. Appx. 724 (10th Cir. 2008), *petition for cert. filed 5/7/08.*

17

relief Plaintiff seeks for these alleged violations are "due process," restoration of good time credits, and damages in the amount of $250,000.  The second line of cases forecloses relief, however.

The punishment Plaintiff received in the marijuana proceeding was "mixed" in that it contained both a loss of good time credits, as well as a loss of visitation privileges and a sentence in administrative segregation.  Because he sought restoration of good time credits – something that "affects the fact or length of his [original sentence of] confinement" – the claim was dismissed without prejudice so Plaintiff could pursue habeas corpus relief.  *Doc. 7* at 2.[20]  But his other claims also "necessarily imply the invalidity of the punishment imposed." *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).  That is because Plaintiff's claims focus on his innocence, alleged exculpatory evidence that was excluded, and alleged improper motives on the part of officers involved with the disciplinary proceedings.  *See id.* at 646-47.  In a recent Tenth Circuit decision, for example, a prisoner sought money damages for denial of due process in a disciplinary proceeding on the ground that defendants falsely accused him, did not follow proper procedures, and reached an

---

[20]  *See also, e.g., Muhammad v. Close,* 540 U.S. 749, 751, n.1 (2004) *(per curiam)* ("The assumption is that the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules.").

"erroneous" result. *Cardoso v. Calbone*, 490 F.3d 1194, 1199 (10th Cir. 2007). The Court found that these claims "would necessarily imply the invalidity of his disciplinary conviction." *Id.*

Admittedly, this second line of cases is not entirely settled. For example, it is not clear whether the "affects the fact or length of the original sentence of confinement" element is independent from the "necessarily imply the invalidity of the punishment imposed." And, the Supreme Court has not yet considered a "mixed" case.[21] That is, a case where the challenged disciplinary proceedings result both in a punishment that can impact the original sentence (loss of good time credits that the prisoner wants restored), and a punishment that does not impact the original sentence but does imply the invalidity of the disciplinary proceeding (punitive segregation with ability to earn good time, or loss of visitation privileges, for which the prisoner wants monetary compensation because the conviction is unconstitutional).[22] Also, there are "mixed" cases in the Tenth Circuit that have

_____

[21] *See, e.g.,* Peralta v. Vasquez, 467 F.3d 98, 103 (2nd Cir. 2006), *cert. denied*, 127 S. Ct. 3006 (2007).

[22] In chronological order the decisions are: *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Heck v. Humphrey*, 512 U.S. 477 (1994); and *Edwards*, decided in 1997 and cited in full in the text. *Preiser* and *Wolff* emphasize the impact on the "original" sentence of confinement. *Heck* and *Edwards* emphasize the invalidity of whatever proceeding is at issue. The Supreme Court's discussion in the *Wilkinson* case suggests that the two inquires are independent, while its later *Muhammad* decision suggests that the question is

been dismissed,[23] while others have been addressed on the merits.[24]

I am persuaded by those decisions that dismiss all claims related to the disciplinary proceedings, including retaliation claims.[25]  First, the *Cardoso* decision

_____

not resolved.  *Compare Wilkinson v. Dotson,* 544 U.S. 74, 78-82 (2005) (discussing this line of cases and concluding together they stand for the proposition that "a state prisoner's § 1983 action [for damages or equitable relief] is barred . . . if success in that action would necessarily demonstrate the invalidity of confinement *or* its duration" ) (original emphasis deleted and other emphasis supplied), *with Muhammad,* 520 U.S. at 752 n.1 (stating the assumption is that the sentence that matters "under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules" and that "This Court has never followed the speculation in *Preiser* . . . that such a prisoner subject to 'additional and unconstitutional restraints might have a habeas claim independent of 1983" but did not resolve the issue, because it was not "raised by the State here").

The *Preiser, Wolff,* and *Edwards* Supreme Court decisions have only involved, or were construed to only involve, cases where the relief sought restoration of lost good time credits. Thus, those cases fall squarely on the "impact on original sentence" side of the ledger.  *See Wilkinson,* 544 U.S. 74 at 78-82.  The *Heck* decision did not involve prison disciplinary proceedings – there the prisoner there sought money damages for the allegedly unconstitutional pre-arrest investigation of the conviction he was serving.  *See Heck,* 512 U.S. at 478-79.  The more recent decision in *Muhammad* was triggered by a disciplinary proceeding, but the plaintiff there did not challenge that decision, seek an expungement of it, and the decision did not implicate any good time credits.  Thus, that case fell outside of both lines of cases.

[23]  *See, e.g., Klein v. McClaury,* 2000 WL 1005238 (10th Cir. 2000) (mixed case affirming dismissal of loss of good time credits and damages); *Reed v. Smith,* 1999 WL. 345492 (10th Cir. 1999) (mixed cased dismissed under *Heck/Edwards*).

[24]  *See, e.g., Witmer v. Powell,* 114 Fed. Appx. 372 (10th Cir. 2004) (claim of retaliation in form of fabricated disciplinary proceedings discussed on merits but footnote observes if damages claim covered good time credits then it was not ripe); *Godlock v. Fatkin,* 84 Fed. Appx. 24 (10th Cir. 2003) (mixed case where claim involved claim re: surveillance videotape & disciplinary proceedings decided on merits); *Klein v. Coblentz,* 1997 WL 767538 (10th Cir. 1997) (mixed case addressed on merits); *Montgomery v. El Paso County Sheriff's Dept.,* 1998 WL 104721 (10th Cir. 1998) (mixed case addressed on merits).

[25]  *See Roberts v. Champion,* 91 Fed. Appx. 108 (10th Cir. 2004).

was itself a classic "mixed" case.  *See* 490 F.3d at 1196 ("following a disciplinary

hearing, Mr. Cardoso was found guilty and sentence to thirty days in administrative

segregation and a loss of 180 earned credits").  There the Tenth Circuit held that

§ 1983 claims which necessarily imply the invalidity of a conviction are not

cognizable (or barred) under *Edwards* and *Heck*, and should be dismissed without

prejudice until the prisoner "can demonstrate that the conviction or sentence has

previously been invalidated."  *Id.* (internal quotations and citations omitted).[26]

This means that a state prisoner who is challenging a disciplinary proceeding must

exhaust state remedies, pursue habeas relief, and succeed, before he can bring a

claim under § 1983.  *E.g., Edwards,* 520 U.S. at 649; *Muhammad,* 540 U.S. at 750.

Second, a critical factor here is the way the New Mexico "good time" statute

works.  The punishment imposed on Plaintiff included both loss of good time credit

(that Plaintiff wants restored) *and* disciplinary confinement and loss of visitation

privileges (that Plaintiff wants compensated by money).  The disciplinary

---

[26]   *See also Janke v. Price,* 1997 WL 537962 at **4-5 (10th Cir. 1997) (claim of wrongful
placement in punitive segregation and deprivation of good time credits because of alleged failure
to allow inmate to present witnesses and evidence and insufficient evidence to support finding of
guilt; Court held that "[b]ecause Mr. Janke emphasizes his innocence . . . [his] claims focus on
the outcome of the disciplinary proceeding . . . [and] the alleged procedural due process
violations led prison officials to reach the wrong result at the disciplinary hearing and to
improperly revoke his good time credits . . . [thus] claims that seek restoration of his good time
credits are not cognizable under § 1983.").

confinement sentence effects good time credits because since inmates who are "in disciplinary segregation" are "not eligible to earn meritorious deductions."  N.M. STAT. § 33-2-34(F); *see also, e.g., State v. Rudolfo,* 187 P.3d 170, 171 (2008)(the "earned meritorious deduction" statute is the "good time" statute).[27]  Thus, the case before me is more than just "mixed," and even if the only disciplinary punishment challenged was the loss of visitation, the "imply the invalidity" rationale would foreclose relief.

Fourth, Plaintiff's claims concerning the disciplinary proceedings are intimately tied to the validity of the convictions – the reasons why Plaintiff claims to be entitled to restoration of good time credits are no different than the reasons why he claims to be entitled to damages.  His conviction carried sentences that impact both directly and indirectly on good time credit awards.  Just as the good time restoration credit aspect of the case plainly should be dismissed, then so too should the rest of the related claims.  It makes no sense to allow piecemeal and potentially contradictory litigation to proceed simultaneously.

---

[27]  See also Doc. 16 at 2 (complaint that he was "put in segregation fo 36 days for sanctions *which has cause my points to go up and denied me to continue to program*) Plus 6 days prior to my family visit, after earning clear conduct I was placed in segregation, and denied a visit.") (emphasis added).  Thus, even if it is eventually held damages claims cannot be dismissed unless they could impact the length of the original sentence, that is the situation here.

Accordingly, I recommend that, like the good time credits claim, Plaintiff's other claims regarding the disciplinary proceedings be dismissed without prejudice.

## C.  Remaining Stand-Alone Claims

The few remaining claims that stand wholly apart from the merits of the disciplinary proceeding are themselves without merit.  Certain of Plaintiff's pleadings seem to indicate that the "First Amendment" right he exercised was filing a lawsuit against SNMCF officers at some time in the past.[28]  When he was returned to SNMCF, different kinds of "retaliation" ensued.  *See Doc. 16* at 1-2 ("The Institution should of never put me back in the institution knowing that I have a U.S. 1983 filed against staff members, when I should have been immediately transferred to protect me.") (spelling corrected).

*Defendants Blanco & Weister.*  Plaintiff alleges that Defendant Weister "retaliated" against him by "moving me and threatening me if I didn't quit helping other inmates he would slam me down."  *Doc. 1* at 3.  He clarifies that what he means is because Plaintiff assisted other inmates, Defendant Weister called him a name and moved him from one cell to another after being found with tobacco,

---

[28]  It is not clear which case he is referring to – he has filed many with this court in the past, both habeas and civil rights, under various derivations of his name.  His prisoner number is 46831.  *See, e.g., Garcia v. Bassett,* CIV 97-1228 JAP/LFG; *Garcia v. Lucero,* CIV 99-814 MV/WD; *Garcia v. Lucero,* CIV 00-48 MV/KBM; *Garcia v. Lucero,* CIV 00-1288 MV/WD; *Garcia v. Wheeler,* CIV 04-552 MCA/LAM; *Garcia v. Hatch,* CIV 06-617 JCH/ACT.

even though none of the others who were found guilty of the same were moved. *See Doc. 25* at 3, -4 (paragraph 5); *id.* at 5-6 (paragraph 9).[29]  Since Plaintiff was also convicted of the tobacco charge and received a disciplinary sentence, he considers being moved as being punished "twice for the same offence."  *Id.* at 3 (paragraph 5).  Defendant Blanco is connected to this allegation because he was the one who allegedly "approved [Plaintiff] of being moved due to a Report for tobacco out of retaliation when 3 other guys received Major Reports when mine was a Minor."  *Doc. 1* at 3.

Plaintiff has failed to allege, must less show, that his "different" treatment was the result of a suspect classification or that the distinction between him and the others was not reasonably related to a legitimate penological purpose.  As such, the equal protection aspect of the claim should be dismissed.  *E.g., Fogle,* 435 F.3d at 1260; *White v. Golder,* 245 Fed. Appx. 763, 764 (10th Cir. 2007) (citing *Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir. 1996) and *Templeman v. Gunter,* 16 F.3d 367, 371 (10th Cir. 1994)).

Although the Court does not countenance such behavior and finds it

---

[29]  Defendant Weister avers that the phrase "slam down" in prison parlance means to "refer an inmate to discipline."  *Martinez Report* at 256.  Plaintiff's response does not challenge this translation.  Thus, "slam down" has no physical implications here.

unprofessional, assuming for the purposes of argument that the name-calling aspect

of the claim is true, it is not actionable.  *E.g., Collins v. Cundy,* 603 F.2d 825, 827

(10th Cir. 1979) (sheriff's threats to hang a prisoner were insufficient to state

constitutional deprivation under § 1983); *McBride v. Deer,* 240 F.3d 1287, 1291 n.

3 (10th Cir. 2001) ( "[A]cts or omissions resulting in an inmate being subjected to

nothing more than threats and verbal taunts do not violate the Eighth

Amendment."); *Moore v. Morris,* 116 Fed. Appx. 203, 205 (10th Cir. 2004) (racial

epithet is "inexcusable and offensive" but does not "amount to a constitutional

violation;" nor does "embarrassment and emotional injury in the form of pain,

suffering, mental stress, and depression does not constitute an actionable claim.");

*Rivera v. Hassler,* 79 Fed. Appx. 392, 394 (10th Cir. 2003) ("The alleged verbal

abuse, if true, is deplorable and unprofessional.  Although we can imagine

situations where verbal abuse might amount to the level of cruel and unusual

punishment, we do not believe this case presents such a situation."); *Pryce v.

Cooper,* CIV 05-1021 MCA/KBM (Doc. 93 at 21-22 and cases cited therein).

Likewise, Plaintiff's claim of retaliation is merely conclusory.   "Prison

officials may not retaliate against or harass an inmate because of the inmate's

exercise of his constitutional rights.  However, an inmate claiming retaliation must

allege specific facts showing retaliation because of the exercise of the prisoner's

constitutional rights." *Fogle,* 435 F.3d at 1263-64 (quotation omitted).  Plaintiff's

"allegations of retaliation must fail because he has presented no evidence that the

defendants' alleged retaliatory motives were the 'but for' cause of the defendants'

actions." *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir. 1998).  Indeed, Plaintiff

alleges that his cell move was authorized after his conviction for a tobacco

violation.

     Accordingly, I recommend that all claims against Defendants Blanco and

Weister be dismissed with prejudice.

     *Defendant Sanders.*  Plaintiff alleges inconsistently that Defendant Sanders

"retaliated" against him for exercising his First Amendment rights by giving

Plaintiff "a job on an outside detail which causes my medical problems to get worse

even after I have written him a request explaining my medical problems and

requesting a new job," *Doc. 16* at 1, as well as for removing Plaintiff "from my job,"

*Doc. 1* at 3.  His response clarifies that Plaintiff did not want to be on "Detail K,"

an outside job which he says aggravated his breathing problems,[30] and wanted to be

assigned to "Detail B" after he got back from serving his disciplinary punishment in

segregation.  He claims another inmate was allowed to return to his job after being

---

[30] But the documents Plaintiff attached to his response show that he was prohibited from working outside on Detail "K" because of his disciplinary charges.  *See Doc. 25* at 33-34.

placed in disciplinary segregation.  *See Doc. 25* at 4-5 (paragraph 6).

Prisoners have no right to prison employment or a particular prison job.  *E.g.,* *Williams v. Meese,* 926 F.2d 994, 998 (10th Cir. 1991).  Moreover, for the same reasons as with claims against Defendants Blanco and Weister, Plaintiff's conclusory equal protection and retaliation claims in this regard fail.

*Defendant Edgman.*  After not clarifying his claims with respect to Defendant Edgman as I ordered, *see Doc. 14* at 1; *Doc. 15* at 3; *Doc. 16* at 1-2, in his response, Plaintiff now asserts that he "falsified" a report explaining why he assigned Plaintiff to a top bunk.  *Doc. 25* at 6 (paragraph 10).  Not only is the assertion belated, it is conclusory and should be dismissed.

Wherefore,

IT IS HEREBY RECOMMENDED that Plaintiff's disciplinary claims be dismissed without prejudice and that his remaining claims against Defendants Blanco, Weister, Sanders, and Edgman be dismissed with prejudice.

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  A party must file any objections with the Clerk of the District Court within the ten day period  if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

UNITED STATES MAGISTRATE JUDGE